**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
                                                          )
**COMCAST CABLE**                                         )
**COMMUNICATIONS, LLC,**                                  )
                                                          )
         **Plaintiff,**                                   )
                                                          )
              **v.**                                      )     **Civil Action No. 15-cv-1724 (RMC)**
                                                          )
**ISSAM SALAH HOURANI,**                                  )
                                                          )
         **Defendant.**                                   )
———————————————————— )

**OPINION**

Plaintiff Comcast Cable Communications, LLC, brought this suit seeking a

declaratory judgment to determine its obligation to comply with a foreign discovery order.

Comcast was served by Defendant Issam Hourani, who is a citizen of the United Kingdom and a

claimant in a U.K. defamation suit, with an order from a U.K. court requiring disclosure of the

name and address of the Comcast customer who used a particular Internet Protocol (IP) address

on specific dates in 2015 or later.  Mr. Hourani believes that the subscriber used the IP address to

defame him through internet postings.  Under the Communications Act, 47 U.S.C. § 551(c),

Comcast may only disclose the information sought if so ordered by a U.S. court through the

procedure provided in 28 U.S.C. § 1782.  Thus, Comcast filed this suit seeking a judgment

declaring whether the U.K. discovery order is enforceable against Comcast.  The subscriber,

proceeding as John Doe, objected to enforcement of the U.K. discovery order.  As explained

below, the Court will enter a declaratory judgment finding that Comcast need not comply with

the U.K. order without a § 1782 order and that a § 1782 order will not be issued.

1

## I. FACTS

Issam Hourani filed suit in London against PsyberSolutions LLC, its Chief Executive Officer Allison Blair, Alistair Thomson, and Bryan McCarthy alleging that they operated a "Campaign" to assassinate his character, portraying Mr. Hourani as a criminal involved in the abduction, false imprisonment, torture, drugging, rape, and murder of Anastasya Novikova, in Beirut, Lebanon in 2004. *Hourani v. Thomson*, Claim No. H14 D 05164, U.K. Compl., dated Dec 10, 2014 [Dkt. 3]. In the U.K. Complaint, Mr. Hourani alleges that (1) the defendants established websites, Facebook pages, Twitter accounts, and a YouTube channel on which they published words and images defaming Mr. Hourani by falsely connecting him to Ms. Novikova's murder; (2) the defendants organized a vigil outside Issam Hourani's London home on June 19, 2014, and a demonstration in Hyde Park and outside the Lebanese Embassy in London on November 16, 2014 (collectively, the Demonstrations) to commemorate the tenth anniversary of Ms. Novikova's death; and (3) the defendants videotaped the Demonstrations and posted the videos on the Internet. U.K. Compl. at 2-19. The last of the alleged defamatory statements was posted online on December 12, 2104. *Id*. at 8. Mr. Hourani contends that this course of conduct, including the publication of defamatory statements, constituted defamation and harassment in violation of a British statute, "section 1(1) of the Protection from Harassment Act of 1997." *Id*. at 2, 26.

The U.K. Complaint is substantially similar to the complaint filed here by Issam Hourani's brother, Devincci Hourani. *See Hourani v. PsyberSolutions*, 15-cv-933 (RMC) (Compl. filed June 15, 2015). This Court recently dismissed Devincci Hourani's case because,

among other things, he failed to allege malice as required in a defamation case where a limited-purpose public figure is a plaintiff.  *See id.*, Op. (Feb. 18, 2016); Order (Feb. 18, 2016).[1]

On August 19, 2015, the U.K. court ordered Comcast to disclose to Issam Hourani:

> (a) the name and address of the user(s) of IP address 98.204.52.170 *between 23 May 2015 and 23 July 2015 or the earliest possible time after these dates*; and
>
> (b) any other recorded information, including billing information, that may assist in determining the IP address user, to the extent such information is available.

U.K. Order [Dkt. 3] at 1-2 (emphasis added).  The U.K. Order further provided that Mr. Hourani may use the information produced "for the purpose of bringing proceedings for defamation and/or harassment and/or other civil proceedings against any individual or other entity thereby identified and/or assisting the Claimant to establish the extent of the involvement of those identified in the matters complained of in the present action."  *Id.* at 2.  Mr. Hourani believes that the subscriber who used the identified IP address is a person who was "hired to stage fake performances to defame and cause harm to defendant and [to] film the performances to be uploaded onto websites and social media sites for dissemination on the internet."  Def. Mem. [Dkt. 17-5] at 2.[2]

---

[1] As noted in the Court's Opinion in *Hourani v. PsyberSolutions,* 15-cv-933 (RMC), Ms. Novikova died when she fell, jumped, or was thrown out of a window at an upper-floor Beirut apartment owned by Issam Hourani and his brother, Devincci Hourani.  Ms. Novikova was the reputed mistress of a former high-level Kazakh official, Rakhat Aliyev, who was the son-in-law of the President of Kazakhstan from 1983 to 2007.  Issam Hourani was married to Mr. Aliyev's sister.

[2] In *Hourani v. PsyberSolutions*, Devincci Hourani alleged that this same IP address, 98.204.52.170, "belongs to Blair and PsyberSolutions."  *Hourani v. PsyberSolutions*, 15-cv-933 (RMC), Compl. ¶ 34.

Mr. Hourani served Comcast with the U.K. Order.  Comcast did not comply and counsel for Mr. Hourani threatened to pursue legal remedies against Comcast.  Compl. [Dkt. 1] ¶ 2.  Comcast notified the subscriber shown by Comcast's records to be the user of the IP address at the relevant times, and the subscriber indicated that it did not consent to disclosure of any of its identifying information.  *Id*. ¶ 3.  The subscriber threatened to file suit against Comcast under the cable privacy provision of the Communications Act, 47 U.S.C. §551(f), if Comcast disclosed the subscriber's identity.  *Id*.  As a result, Comcast filed this declaratory judgment action to determine its obligation under the U.K. Order.  Comcast seeks a declaratory judgment indicating whether or not the U.K. Order is enforceable against it under 28 U.S.C. § 1782 and 47 U.S.C. § 551(c).

Comcast and Mr. Hourani filed cross motions for judgment on the pleadings.  *See* Def. Mot. [Dkt. 17]; Pl. Opp'n [Dkt. 18]; Pl. Cross Mot. [Dkt. 19]; Def. Opp'n [Dkt. 20]; Pl. Reply [Dkt. 21].[3]  The parties agreed that the Court should enter judgment on the pleadings, but they disagreed regarding whether the subscriber should receive pre-disclosure notice and an opportunity to be heard.  Def. Opp'n at 2; Pl. Reply at 1.  On February 23, 2016, the Court entered judgment in favor of Comcast and granted the petition for an order under 28 U.S.C. § 1782—on the condition that Comcast would serve the subscriber and providing that the subscriber had 21 days to object anonymously to the release of its identifying information.  *See* Op. [Dkt. 23]; Order [Dkt. 24].  The subscriber, proceeding anonymously through counsel as "John Doe," timely filed an objection seeking to vacate the Opinion and Order.  *See* Obj. [Dkt.

---

[3] Mr. Hourani styled his motion at Docket 17 as a "motion to dismiss," despite the fact that he already had filed an Answer [Dkt. 8].  Realizing his error, Mr. Hourani then asked that the Court treat his motion as one for judgment on the pleadings.  Def. Opp'n at 2.

27].  Mr. Hourani opposed.  *See* Opp'n to Doe Obj. [Dkt. 28].  As explained below, with the benefit of these recent filings, the Court resolves this case anew.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to file a motion for judgment on the pleadings after the pleadings are closed but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  The standard of review on a motion for judgment on the pleadings is virtually identical to the standard for a motion under Rule 12(b)(6).  *United Parcel Service, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, 859 F. Supp. 590, 592, n.1 (D.D.C. 1994).  A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  To survive a motion to dismiss or a motion for judgment on the pleadings, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face."  *See Twombly*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555.  A court need not accept as true legal conclusions set forth in a complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).  "Because a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would

provide a basis for recovery."  *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010).

## III. ANALYSIS

For this Court to declare that the U.K. Order is enforceable against Comcast, an order must be issued pursuant to 28 U.S.C. § 1782.  Section 1782 provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.

28 U.S.C. § 1782.  However, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."[4]  An application for a discovery order under § 1782 may be made by a foreign tribunal or by "any interested person."  *In re Gianasso*, No. C 12-80029 Misc. SI, 2012 WL 651647, at *1 (N.D. Cal. Feb. 12, 2012).  An "interested person" includes "a party to the foreign litigation whether directly or indirectly involved."  *In re Merck*, 197 F.R.D. 267, 270 (M.D.N.C. 2000); *see also Lazaridis v. Int'l Centre for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 113 (D.D.C. 2011) ("interested person" includes complainant who prompts a foreign investigation and who "possesses a reasonable interest in obtaining [judicial] assistance").

Even when the § 1782 threshold requirements are met, a district court is not required to grant a § 1782 application simply because it has authority to do so.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  Such a decision is within the district

---

[4] Of course, a person can voluntarily provide testimony or produce a document.  *See* 28 U.S.C. § 1782 (b) ("This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.").

court's discretion. *Id.* at 260. The Supreme Court identified the following factors for

consideration in exercising such discretion: (1) whether the person from whom discovery is

sought is a participant in the foreign proceeding (if he is, the need for a § 1782 order is not

readily apparent); (2) the nature of the foreign tribunal and its proceedings and its receptivity to

U.S. federal-court assistance; (3) whether the request for assistance under § 1782 conceals an

attempt to circumvent foreign discovery restrictions; and (4) whether the request is unduly

intrusive or burdensome. *Id.* at 264-65.

Section 1782 is also limited by the cable privacy provision of the

Communications Act, 47 U.S.C. § 551(c). Section 551(c) provides, in relevant part, that a cable

operator cannot disclose personal identifying information regarding a subscriber unless the

subscriber consents or the cable operator acts pursuant to a court order with notice to the

subscriber. *See* 47 U.S.C. § 551(c)(1) & (2)(B).[5]

---

[5] Title 47, § 551(c) provides in full:

(c) Disclosure of personally identifiable information

(1) Except as provided in paragraph (2), a cable operator shall not
disclose personally identifiable information concerning any
subscriber without the prior written or electronic consent of the
subscriber concerned and shall take such actions as are necessary to
prevent unauthorized access to such information by a person other
than the subscriber or cable operator.

(2) A cable operator may disclose such information if the disclosure
is—

(A) necessary to render, or conduct a legitimate business activity
related to, a cable service or other service provided by the cable
operator to the subscriber;

(B) subject to subsection (h) of this section, made pursuant to a court
order authorizing such disclosure, if the subscriber is notified of
such order by the person to whom the order is directed;

*In re Gianasso*, 2012 WL 651647, exemplifies the analysis required when the cable privacy statute is implicated.  Mr. Gianasso was a Swiss citizen who sought discovery in aid of an ongoing criminal investigation and a planned-for civil suit in Switzerland regarding defamatory statements posted on a website called Glassdoor.com.  2012 WL 651647, at *1.  Mr. Gianasso subpoenaed Glassdoor for the identity of the user who posted the comments.  The district court found that: Glassdoor was located within the district; Mr. Gianasso was an interested party in the Swiss proceedings; the discovery was relevant and necessary for those proceedings; Glassdoor was not a party to the Swiss case; and the evidence was not obtainable in Switzerland without the aid of a U.S. court.  *Id.* at *2.  There was no evidence that a Swiss court would be unresponsive to U.S. assistance or that Mr. Gianasso was attempting to evade restrictions on discovery imposed by Swiss law.  Finally, the discovery was not unduly burdensome or intrusive, as it only sought the name and address of the user who posted the

---

(C) a disclosure of the names and addresses of subscribers to any cable service or other service, if—

(i) the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure, and

(ii) the disclosure does not reveal, directly or indirectly, the—

(I) extent of any viewing or other use by the subscriber of a cable service or other service provided by the cable operator, or

(II) the nature of any transaction made by the subscriber over the cable system of the cable operator; or

(D) to a government entity as authorized under chapters 119, 121, or 206 of Title 18, except that such disclosure shall not include records revealing cable subscriber selection of video programming from a cable operator.

comments, not the content of any communication.  *Id.*  The court further found that Glassdoor

was subject to the privacy provisions of the Communications Act.  Accordingly, it ordered

Glassdoor to provide formal notice of the subpoena within 7 days to the user whose identity was

sought and the court gave the user 21 days after receiving notice to file any objection to the

subpoena.  *Id.* at *3.[6]

In contrast, where a party to an international arbitration petitioned for a § 1782

order to enforce third party subpoenas, the threshold requirements were met but the court denied

the petition because the petitioner was acting to circumvent of the arbitration rules to which it

had agreed.  *In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106-07 (D.D.C. 2010).

"[T]he evidence suggests that Caratube is using section 1782 in an attempt to circumvent the

Tribunal's control over the arbitration procedures, and this factor thus weighs against granting

the petition."  *Id.* at 107.[7]

Comcast seeks a declaratory judgment that Mr. Hourani can only enforce the U.K.

Order under § 1782 and in compliance with § 551(c) of the Communications Act.  The U.K.

Order at issue here is directed to Comcast, and it clearly demands the disclosure of information

that is covered by the cable privacy provision of the Communication Act.  The threshold

requirements of § 1782 are met.  Comcast is found in this district.  While it is not a party to the

---

[6] This 7-day/21-day procedure has been used in similar cases.  *See In re Action and Protection Found.*, No. C 14-80076 Misc. EMC (LB), 2014 WL 2795832, *7 (N.D. Cal. June 19, 2014) (subpoena on website operator for identity of user who allegedly posted hate speech for use in civil and criminal litigation in Hungary); *In re Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) (subpoena on website hosts for information identifying blog author for use in criminal defamation suit in Switzerland).

[7] Caratube is owned in large part by the Hourani family.  *See Hourani v. PsyberSolutions*, 15-cv-933 (RMC), Op. filed 2/18/2016 (noting that Devincci Hourani is the 92% owner of Caratube International Oil Company); Opp'n to Doe Obj. [Dkt. 28] at 2-3 (referring to Caratube as a "Hourani entity").

U.K. proceeding, it is the direct target of the U.K. Order and therefore is an "interested person." Even if Comcast were not an "interested person" under § 1782, Mr. Hourani is a party to the underlying U.K. case and he also seeks a § 1782 order.  *See* Def. Opp'n [Dkt. 20] at 2-4 (arguing that the Court should enter judgment on the pleadings and should order Comcast to comply with the U.K. Order without notice to the subscriber).

However, the Court will exercise its discretion to deny the request for a § 1782 enforcement order.  The subscriber, John Doe, objects to the release of his identifying information.  Most importantly, the U.K. Order to Comcast seeks information regarding the identity of a Comcast subscriber who used IP address 98.204.52.170 "between 23 May 2015 and 23 July 2015 or the earliest possible time after these dates."  U.K. Order.  Mr. Hourani's U.K. suit alleges that last incident of defamation and harassment occurred in December 2014.  Thus, the U.K. Order seeks information that is not relevant to the allegations of the U.K. complaint.[8] Under these circumstances, the request for an order under § 1782 will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court's prior Opinion [Dkt. 23] and Order [Dkt. 24] will be vacated and replaced with this Opinion and the Order accompanying it.  Defendant's motion for judgment on the pleadings [Dkt. 17] will be denied, and Comcast's cross motion for judgment on the pleadings [Dkt. 19] will be granted.  A declaratory judgment will be entered providing that Comcast shall not comply with the August 19, 2015 U.K. Order without an order of enforcement under 28 U.S.C. § 1782 and denying the request for a § 1782 enforcement order.

---

[8] Mr. Hourani contends that the U.K. Order should have stated between 23 May 2015 and 23 July *2014*, not 2015, as evidenced by the solicitor's statement filed in the U.K. court.  *See* Opp'n to Doe Obj. at 4-5.  This Court cannot guess at what the U.K. court intended and it cannot rewrite the U.K. Order.  The plain language of the U.K. Order must be applied as written.

A memorializing Order accompanies this Opinion.


Date: May 23, 2016                                          _____/s/_____
                                                            ROSEMARY M. COLLYER
                                                            United States District Judge